UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
ROLANDO OQUENDO,                                            :     02 Civ. 1832 (RJH)(MHD)
                                                            :
                              Petitioner,                   :
                                                            :
            -against-                                       :     **MEMORANDUM OPINION**
                                                            :     **AND ORDER**
DANIEL A. SENKOWSKI, Superintendent,                        :
Clinton Correctional Facility,                              :
                                                            :
                              Respondent.                   :
                                                            :
------------------------------------------------------------x


      Petitioner Rolando Oquendo brings this habeas petition pursuant to 28 U.S.C. § 2254 challenging his state court conviction for two counts of First Degree Robbery, N.Y. Penal Law § 160.15(4) (McKinney 1998), two counts of Second Degree Robbery, § 160.10(3) (McKinney 1998), one count of Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law § 265.03 (McKinney 2006), one count of Criminal Possession in the Third Degree, N.Y. Penal Law §265.02(4) (McKinney 2006), and one count of Criminal Possession of Stolen Property in the Fourth Degree, N.Y. Penal Law § 165.45(5) (McKinney 2006).  These charges stem from a series of livery cab robberies occurring in 1996.

      Petitioner makes five arguments in support of his habeas petition:  (1) the procedures police used to identify him as the perpetrator were unduly suggestive; (2) the fact that the prosecutor allowed the Grand Jury to consider evidence of one robbery as proof of guilt of another invalidated his indictment; (3) the trial court erred when it declined to give a requested jury charge regarding the evaluation of identification

evidence; (4) the prosecutor violated his obligations under *People v. Rosario*, 9 N.Y.2d 286, 289 (1961), by not disclosing a handwritten police report to the defense; and (5) the prosecutor violated his obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by refusing to identify the owner of license plates recovered from one of the stolen cabs.

On December 9, 2005, United States Magistrate Judge Michael H. Dolinger issued a Report and Recommendation ("Report") recommending that the petition be denied in its entirety. On January 9, 2006, petitioner filed timely objections to the Report ("Objections"). For the reasons set forth below, this Court adopts the Report and denies the petition.

## BACKGROUND

Petitioner's arrest and convictions arose out of a series of three livery cab robberies occurring in 1996. A Grand Jury indicted petitioner on charges regarding these three crimes, as well as on charges arising out of a subsequent confrontation related to the robberies. At trial, a jury acquitted petitioner of the charges relating to the February 4, 1996 robbery and convicted him on all other charges. However, as the factual circumstances underlying all of these crimes, and the identifications made by the victims, are relevant to petitioner's claims, they will be described below.

1.  **Crimes**

On the night of February 4, 1996, livery cab driver Marcos Frometa picked up a passenger at 148th Street and Broadway in New York City's Upper East Side. (May 16, 1996 Grand Jury Tr. 9.) Brandishing a gun, the passenger robbed Frometa of his car, coat, radio and cash. (*Id.* at 10-13.) Frometa hailed a cab and followed the perpetrator to Brooklyn, where he eventually escaped. (*Id.* at 13.)

On the night of February 10, 1996, livery cab driver John Gonzalez picked up a passenger in Manhattan at 146th and Broadway. (April 12, 1996 Grand Jury Tr. 6.) The passenger robbed Gonzalez of his car and cash at gunpoint. (*Id.* at 6-8.) Gonzalez hailed a cab and pursued the perpetrator. (*Id.* at 9.) When Gonzalez stopped to request police assistance, the perpetrator escaped. (*Id.*)

On March 6, 1996, livery cab driver Angel Martinez picked up a passenger in the Upper East Side. (May 16, 1996 Grand Jury Tr. 25.) At gunpoint, the passenger robbed Martinez of his car. (*Id.* at 27.) Martinez flagged down a passing car and chased the perpetrator to Brooklyn. (*Id.* at 28.) When he stopped to alert a police officer of the crime, the perpetrator escaped. (*Id.* at 29.)

The following day, March 7, 1996, livery cab driver Rodhame Carmona spotted Martinez's stolen car at East 110th Street between Second and Third Avenue. (*Id.* at 33.) After he notified police, he called fellow cab drivers, including Sammy Paralta (*id.* at 56) and Elvis Vargas (*id.* at 34) to the scene. Eventually, a man appeared, removed a gun from inside the stolen car and threatened the drivers. (*Id.* at 35.) The gunman then fled on foot toward a nearby subway station. (*Id.* at 36, 55.) As police and cab drivers gave chase, the suspect discarded several items including a gun, hat, bag, and eyeglasses. (*Id.* at 37.) Eventually, the suspect escaped. (*Id.* at 38.)

**2.     Investigation**

After each crime, investigating officers asked the victims to look through several police photo books. (Mapp/Wade Hearing Tr. ("Hr.") 113-14, 199, 221-22.) Frometa and Martinez failed to identify any suspects using these books. (Hr. at 213, 222.) Gonzalez, on the other hand, identified a photo of George Rivera with ninety percent

certainty. (Hr. at 118, 120-21.) Later, police discovered that Rivera was incarcerated the night Gonzalez was robbed. (Hr. at 121.)

On March 29, 1996, Gonzalez, Peralta, Carmona and Frometa were invited to view a photo line-up. (Hr. at 130.) They were placed in a waiting room and instructed not to speak to one another about the case. One by one, they were brought to a different room to view the photo line-up. Police instructed the witnesses to "focus on the facial features" of the men pictured. (Hr. at 132.) Each witness identified photo number 4, a photo of the petitioner. (Hr. 201-02.)

On April 10, 1996, Detectives Porteus, Ortiz and Dibisceglio invited Gonzales, Martinez, Vargas and Frometa to view a live line-up. (Hr. at 133, 135.) They were placed in a waiting room and instructed to not speak about the case. (Hr. at 135.) Because petitioner was the tallest participant,[1] the line-up was conducted in a sitting position. (Hr. at 140.) Also, because petitioner had very short hair, each participant wore a shower cap. (Hr. at 138.) Petitioner was the only participant with a visible scar, but no steps were taken to conceal it. Petitioner was allowed to choose his position in the line-up: He selected position number 2. (Hr. at 136.)

One by one, the witnesses viewed the line-up. (Hr. at 135.) After viewing, the witnesses were separated from one another. Gonzalez was first to view the line-up. (Hr. at 140-41.) Initially, Gonzalez chose number six, a filler. (Hr. at 141.) After Gonzalez

---

[1] The heights are as follows:

>    Position 1: 5'4''
>    Position 2: 5'8'' (petitioner)
>    Position 3: 5'6''
>    Position 4: 5'6''
>    Position 5: 5'6''
>    Position 6: 5'5''

(Hr. at 183.)

-4-

chose the filler, Detective Porteus asked Gonzalez if he wanted to "take a closer look." (*Id.*)  Gonzalez said yes, and each participant was asked to stand and walk toward the viewing area.  (*Id.*)  When petitioner stood and approached, Gonzalez changed his mind and chose him.  (Hr. at 142.)

Vargas was the next to view the line-up.  He identified number 6, a filler, as the man that retrieved the gun from Martinez's car, threatened the gathered crowd and then fled.  (Hr. at 142-43.)

Martinez was the next to view the line-up.  Martinez failed to identify anyone as the person who robbed him.  (Hr. at 222.)  However, Detective Ortiz testified that he thought Martinez appeared "nervous" and "fidgety."  (Hr. at 223.)  Detective Ortiz thought Martinez recognized petitioner but was too nervous to identify him.  (Hr. at 233-34.)  Nevertheless, Martinez called the police two days later and informed them that, after further reflection, he thought number 2, the petitioner, was the man who robbed him.  (Hr. at 144.)

Frometa was the last to view the April 10th line-up.  He failed to identify anyone as the man who had robbed him.  (Hr. at 203-04.)

On May 1, 1996, Sammy Peralta, a witness to the events of March 7th, was invited to view a similar line-up.  (Hr. at 144.)  This time, petitioner was in position 4.  (Hr. at 147.)   Upon viewing the line-up, Peralta identified number 4, petitioner, as the man that retrieved the gun from the stolen car, threatened the drivers and then fled.  (*Id.*)

**3.    Indictment**

Originally, the Assistant District Attorney pursued indictments for one count of First Degree robbery for the February 4th robbery and one count of First Degree robbery

for the February 10th robbery. (April 12, 1996 Grand Jury Tr. 2.) On April 12, 1996, at the Grand Jury's first meeting, the Assistant District Attorney presented evidence regarding the February 10th charge (*id.* at 2-15), for which the Grand Jury returned an indictment. On April 22, 1996, the Assistant District Attorney withdrew the February 4th charge and added a charge of Second Degree Robbery to the February 10th facts (*id.* at 16-18), for which the Grand Jury returned a second indictment.

On May 16 and 17, in front of a different Grand Jury, the Assistant District Attorney presented evidence regarding the events occurring on February 4th, February 10th, March 6th and March 7th. (May 16, 1996 Grand Jury Tr. 2-61.) In her closing statements, she instructed the Grand Jury to use the crimes' similarities to establish the perpetrator of the February 4th robbery "if the crimes show a significant degree of factual similarities or having concurrent common features or characterized by distinguished oddities." (*Id.* at 62-63.) The Grand Jury returned indictments for every charge.

**4.    Mapp/Wade Hearing**

At the Mapp/Wade pre-trial evidentiary hearing, petitioner requested that the court hold an independent source hearing regarding the line-up identifications. (Hr. at 245-46.) Petitioner argued that the witnesses knew each other and worked together, thus evidence of a possible conspiracy. (*See* Hr. at 244.) Petitioner pointed out that no testimony proved that the witnesses were monitored at the station or shadowed to prevent collaboration. (Hr. at 244.) Respondent argued that petitioner failed to show that the line-up procedures were unduly suggestive. (Hr. at 248-49.) The trial court found for respondent, denying the motion for an independent source hearing and the motion to

suppress. (Hr. at 251.) Though the court promised a written opinion supporting its decision (*id.*), it never issued one.

**5.     Trial**

   *a. In-Court Identifications*

At trial, Frometa and Gonzalez identified petitioner as the robber. Martinez also identified petitioner as man who had robbed him with "ninety percent certainty." Carmona identified petitioner as the man who had retrieved a gun from Martinez's stolen car, threatened him and then fled.

   *b.*    Brady *Material*

Gonzalez testified that the license plates on his car were changed after it was stolen. Petitioner's counsel, unaware of this fact until that point, argued that prosecution must reveal the identity of the plate's owner under *Brady*.[2] Petitioner argued that this fact could identify another suspect and, therefore, materially benefits petitioner's case. The trial court disagreed, found that the owner's name was not *Brady* material and denied petitioner's motion.

   *c.*  Rosario *Material*

During the trial, petitioner subpoenaed Officer Quinones to testify. Petitioner wanted to show that Frometa's description of the robber at trial differed from Frometa's initial description of the robber, as noted in Officer Quinones's police report. Officer Quinones never responded to the subpoena, so petitioner introduced his report into evidence and questioned Frometa on the discrepancies. At the close of trial, the State asked to call Quinones as a rebuttal witness and introduce a previously undisclosed

---

[2] The State must disclose any material information that is beneficial to petitioner. *See Brady*, 373 U.S. at 86.

written copy of his report. Petitioner objected to the previous non-disclosure of Quinones's written report and moved for a mistrial under *Rosario*.[3] The court denied the motion, but the State agreed not to introduce the report or call Quinones as a witness.

### d. Jury Charges

Petitioner, arguing that the state relied solely on identification evidence, requested a jury charge that specifically focused on evaluating identification evidence. Petitioner also moved to exclude any reference to forensic evidence as "misleading." The court denied this request and gave a compact jury charge that referenced both identification evidence and forensic evidence.

### e. Verdict and Sentencing

The jury found the petitioner not guilty on the two charges related to the February 4 robbery of Marcos Frometa. The jury found petitioner guilty on all remaining charges. The court sentenced petitioner, as a predicate violent offender, to twenty-one years in prison. This sentence was set to run concurrently with an incarceration term petitioner had received for an unrelated weapons charge.

## 6. Appeals

### a. Appellate Division

Petitioner appealed to the Appellate Division of the New York State Supreme Court. Petitioner filed two briefs: Counsel's brief alleged that the *Brady* and *Rosario* violations required a mistrial while petitioner's supplementary *pro se* brief argued suggestive identification procedures, a violation in the Grand Jury proceedings and unfair jury charges.

---

[3] Under New York Law, the state must disclose all prior statements made by a witness that relate to subject matter of the witness's testimony. *See Rosario*, 9 N.Y.2d at 289.

With regard to the *Rosario* violation, the court found that petitioner received proper relief when the State agreed not to introduce the written report or the testimony of Quinones. *People v. Colon*, 724 N.Y.S.2d 844, 844 (N.Y. App. Div. 2001). The court also rejected the *Brady* argument, finding that the name of the license plate's owner was irrelevant to the issue of whether defendant was the person who stole the car. *Id.* Lastly, the court found that the trial court properly exercised its discretion when finding that the line-up identifications were not prejudicial to petitioner. *Id.* at 309. As for all other arguments, including those addressed in the supplementary *pro se* brief, the court issued a general rejection and affirmed the trial court's decision. *Id.*

  b. Court of Appeals

Petitioner's counsel filed an application for leave to appeal with the Court of Appeals. The application letter, prepared by counsel, outlined the *Brady* and *Rosario* claims. Though he attached petitioner's supplemental *pro se* brief, counsel never referred to it in his letter. The Court of Appeals, finding no questions of law that ought to be reviewed, denied petitioner's request for leave to appeal. *People v. Colon*, 756 N.E.2d 85 (N.Y. 2001).

## STANDARD OF REVIEW

A district court may designate a magistrate to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motion. *See* 28 U.S.C. § 636(b)(1). Within ten days of service of the recommendation, any party may file written objections to the magistrate's report. *Id.* "If no objections are filed, or where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in

the original petition, the district court should review the report and recommendation for clear error." *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (internal quotation marks and citations omitted). "On the other hand, where objections are 'specific and . . . address only those portions of the proposed findings to which the party objects,' district courts should conduct a *de novo* review of the issues raised by the objections." *Id.* at 347 (quoting *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 381–82 (W.D.N.Y. 1992)).

      Petitioner generally objects to the Report's recommendation that his *Rosario* claim and his *Brady* claim be denied. (Objection 28.) With regard to petitioner's *Rosario* claim, the Magistrate found that *Rosario* rights were based entirely on state law, and therefore a *Rosario* violation is not a basis for habeas review. (Report 38); *see Stephens v. Costello*, 55 F. Supp. 2d 163, 167 (W.D.N.Y. 1999); *Green v. Artuz*, 990 F. Supp. 267, 274 (S.D.N.Y. 1998). With regard to petitioner's *Brady* claim, the Magistrate held that petitioner must show that there is a reasonable probability that the non-disclosure altered the trial's outcome. (Report 39); *see Mendez v. Artuz*, 303 F.3d 411, 412 (2d Cir. 2002); *U.S. v. Orena*, 145 F.3d 551, 557 (2d Cir. 1998). Noting that the trial court and Appellate Division held that the information would not have changed the outcome, the Magistrate found that reasonable probability was lacking. (Report 40.) This Court finds no clear error in those recommendations and adopts them in their entirety.

      Petitioner does object with specificity to the Report's recommendation that this Court deny his unduly suggestive procedure claim, his Grand Jury claim and his jury

-10-

charge complaint because they are unexhausted and procedurally barred. (Objections 17–21.) A *de novo* review of these claims follows.

## DISCUSSION

**1.    Exhaustion of State Remedies**

A federal court may grant a petition for habeas corpus, notwithstanding contrary state court adjudication on the merits of a claim, in accordance with the following provisions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the Unites States; or
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

However, a federal court may not grant a writ of habeas corpus unless the petitioner has exhausted his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(a). To exhaust state court remedies, petitioner must "fairly present" the claims to the highest state court capable of review. *See Baldwin v. Reese*, 541 U.S. 27, 30 (2004) (noting that petitioner must fairly present his federal claim to the highest state court); *see also Gray v. Netherland*, 518 U.S. 152, 163 (1996) (noting that claim presented to highest state court must be premised on essentially the same logic and facts as claim raised in habeas petition). Here, petitioner presented all five arguments to the Appellate Division. After reviewing his five arguments, the Appellate Division rejected them and affirmed his conviction. *People v. Colon*, 724 N.Y.S.2d at 844. Petitioner then applied for leave to

appeal with the Court of Appeals, the highest court capable of review.  Petitioner's application, a letter written by counsel, detailed petitioner's *Rosario* and *Brady* claims.  Additionally, counsel attached a copy of petitioner's supplemental *pro se* brief, which detailed his arguments relating to the unduly suggestive procedure, the Grand Jury procedure and the jury charges.  However, counsel's letter never referenced the *pro se* brief or the three claims it contained.

When a petitioner's appeal application letter mentions some of his claims while an attached brief details other, the claims not mentioned in the application letter are not fairly presented.  *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991); *see also id.* at 120 (finding that New York's highest court has no duty to "look for a needle in a paper haystack").  "[A]rguing one claim in [an application] letter while attaching an appellate brief without explicitly alerting the state court to each claim raised [within the appellate brief] does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction."  *Jordan v. Lefevre*, 206 F.3d 196, 198–99 (2d Cir. 2000).  Had the application letter pressed *no* specific argument but only a concise application, the "fair import" of which requests review of all the issues outlined in the attached briefs, the issues raised in the briefs would be fairly presented.  *Galdamez v. Keane*, 394 F.3d 68, 74–76 (2d Cir. 2005) (holding there was exhaustion under such circumstances, and distinguishing from the facts in *Jordan*, which *Galdamez* cites with approval); *see also Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir.), *cert. denied* 531 U.S. 819 (2000) (holding that an application letter that *both* argues a specific claim *and* explicitly requests that the court review the additional arguments contained in attached brief fairly presents all arguments contained in brief).  As petitioner's application letter

-12-

specifically pressed the *Rosario* and *Brady* arguments but never mentioned the three *pro se* claims or expressly directed the Court of Appeals to the arguments contained in the *pro se* brief, this Court finds that the three *pro se* claims were not fairly presented. Thus, petitioner did not exhaust his claims relating to unduly suggestive identification procedures, improper Grand Jury procedure and improper jury charges, at the state level.

**2.     State Procedural Bar**

Generally, courts dismiss unexhausted claims without prejudice, allowing petitioner to assert his unexhausted claims in state court. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). If, however, there is no available state forum to pursue a state remedy because of a state procedural bar, the otherwise unexhausted claim may be deemed exhausted for purposes of 28 U.S.C. § 2254(b). *See Gray*, 518 U.S. at 161 (citing *Engle v. Isaac*, 456 U.S. 107, 126 n.28 (1982)); *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). In this case, petitioner has forfeited his right to pursue his *pro se* claims in the New York Court of Appeals because a petitioner is entitled to only one request for leave to appeal. *See Spence v. Superintendent*, 219 F.3d 162, 169–70 (2d Cir. 2000); *Grey*, 933 F.2d at 120.

Petitioner argues that, because he could still file a *coram nobis* petition, he can obtain collateral review of the unexhausted arguments. (Objections 19.) This is not the case. New York State law prohibits collateral review when the Appellate Division has dismissed a claim on its merits. *See* N.Y. Crim. Proc. L. 440.10(2)(a); *see also Grey*, 933 F.2d at 120. Here, the Appellate Division considered the merits of petitioner's five claims—including the three *pro se* claims—and rejected them. *People v. Colon*, 724 N.Y.S.2d at 844. Therefore, collateral review is unavailable.

As New York forecloses both direct and collateral review, petitioner's *pro se* claims of unduly suggestive police procedure, improper Grand Jury procedure and improper jury charges are procedurally barred. Since further state review is foreclosed, petitioner has satisfied the exhaustion requirement of § 2554(b). "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence." *Gray*, 518 U.S. at 162. Therefore, petitioner may not obtain federal habeas review of these claims unless he shows cause for the procedural default as well as prejudicial effect, *see Harris*, 489 U.S. at 262 (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)); or if he can demonstrate a sufficient probability that "[this Court's] failure to review his federal claim will result in a fundamental miscarriage of justice," *Edward v. Carpenter*, 529 U.S. 446, 451 (2000); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Because petitioner does not seriously argue that there is a risk of a fundamental miscarriage of justice,[4] the Court will focus on whether "cause and prejudice" exists.

Petitioner argues that, because his attorney failed to present the arguments contained in his *pro se* brief when requesting leave to appeal, he should be allowed to obtain habeas review. (Objections 20-21.) As a general proposition, "cause" may be demonstrated by showing that "the procedural default is the result of ineffective assistance of counsel." *Murray*, 477 U.S. at 488. Where, however, the alleged ineffective assistance involves a discretionary appeal, there is no constitutional right to

---

[4] The Magistrate found, and this Court agrees, that in his original petition, petitioner did not argue that a fundamental miscarriage of justice would occur if his claims are not heard. (Report 22.) In his objections, petitioner argues that the thrust of his appeal was that he was innocent, and that that position implies a fundamental miscarriage of justice argument. (Objections 20–21.) Assuming that the argument was made, petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 492. Construing petitioner's arguments liberally, this demanding standard is not met. (Report 22–23.)

counsel and any error by counsel cannot be considered cause sufficient to excuse a procedural default. *See Chalk v. Kuhlmann*, 311 F.3d 525, 528 (2d Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 756–57 (1991)). Under New York law, petitioner had an appeal as of right to the Supreme Court, Appellate Division; however, defendants must seek leave to appeal to the Court of Appeals, the grant of which lies in that court's discretion. Since petitioner did not have a constitutional right to counsel on his appeal to the Court of Appeals, any error by counsel in the course of the appeal would not violate any constitutional right and does not establish cause for petitioner's procedural default. *Id.* at 529.

## CONCLUSION

The petition is denied. Petitioner has asserted five claims in his habeas petition. For the reasons stated in the Report, petitioner's *Brady* and *Rosario* claims are dismissed with prejudice. For the reasons stated in this Opinion, Petitioner's *pro se* claims relating to suggestive police procedure, invalid Grand Jury procedure and improper jury instructions are also dismissed with prejudice.

SO ORDERED.

Dated: New York, New York
       September 18, 2006

Richard J. Holwell
United States District Judge